We will call the Humana case next. Good morning, Your Honor. May it please the Court. My name is Jonathan Massey. I'll be here on behalf of the plaintiffs Humana and Centene. With the Court's permission, I'd like to reserve three minutes for rebuttal. Sure. Thank you. The plaintiff's health plan has alleged that the defendants defrauded them into putting suboxone film onto their formularies. A formulary is a list of approved drugs that a health plan like an insurer will pay for. The plaintiffs here allege that the defendants' own business plans said that a, quote, a key success driver, unquote, of their scheme was, quote, driving formulary support for suboxone film through payers. I think we understand that. Yes. So, Judge Goldberg leaned heavily on Illinois BRIC. Yes. Tell us why he's wrong. So, two reasons. Particularly a lot of your concession is that you're not the end user. Correct. We're like an end payer, but we concede we're not a direct purchaser. But the Illinois BRIC rule is aimed at passed on overcharges through a series, typically through a distribution chain. We allege a direct, a formulary placement claim of direct injury, which is the same kind that happened in Evandia. This is essentially, very materially, we believe, identical allegations to the Evandia situation where we are directly injured by putting film on our formularies and reimbursing hundreds of millions of dollars or paying for hundreds of millions of dollars of film that we would not otherwise have paid for. And so, just, if you look at the Evandia papers, the complaints, your honors, both Judge Roth and Judge Restrepo, you've wrote opinions in the Evandia case. Judge Restrepo, you said the plans assert they would not have placed Evandia on their formularies if GlaxoSmithKline had disclosed the cardiovascular risks. That's at page 755. As Judge Roth said, plaintiff's theories of causation is that third-party payers relied on GSK's misrepresentation when including Evandia on their formularies. Yeah, but you don't get to causation until you get past cognizable injury, right? That's true. In half of European... And did you plead cognizable injury? Did you plead out-of-pocket costs? Yes. We pled hundreds of millions of dollars of out-of-pocket costs. That's at paragraph 134 of the Humana complaint and paragraph 138 of the Sentine complaint. That's JA 117 and 340. Because we never would have paid. We pled that we would not have paid for Suboxone film unless... but for their scheme. That is in the complaints at JA 173. But were these out-of-pocket costs? Yeah. Well, yes. Because didn't you pass those costs on to someone else? Oh, no. The Illinois BRIC theme is, in effect, incorporated in the Evandia conspicuous injury requirement that you plead out-of-pocket costs. And if you are getting an inflated charge from your insureds and passing it on, then it's the same situation as Illinois BRIC. You can't show an out-of-pocket cost. And the fact that you paid more to your insureds does not mean that you weren't getting more back again in premiums to cover up any loss of profit you may have had. So how did you prove, other than imprecise verbiage, how did you prove your conspicuous injury? Well, this was a motion to dismiss. So we alleged out-of-pocket loss of hundreds of millions of dollars. And the district court did not find that we had passed it on. That wasn't the district court's 12B-6. The district court's 12B-6 was that somehow we were end payers and that wasn't close enough. And Judge Roth, I think the same point was argued in Evandia, that insurers somehow pass along the costs to their subscribers. And that was rejected in Evandia. Frankly, it's not even in this case. No one's raised it. If it could come up, it could come up, I suppose, at summary judgment or something. But there's no proof of any passed on by us at all. We are simply paying the cost directly. So remind me the paragraph numbers in the complaint. In the complaint, right. Yeah. I'm reading the Humana complaint. Okay. So the Humana complaint at paragraph 46. Hold on a minute. Sure. It's JA-84. All right. It says driving formulary support for suboxone film through payers like plaintiffs was a key goal of the suboxone scheme because third party payers were the ultimate source of endivious profits. And then actually the previous paragraph, paragraph 45, talks about how their business plans were driving formulary support as one of the key success drivers through payers, driving formulary support through payers. And then paragraph, in the Humana complaint, paragraph 207, which is at JA-133, that plaintiffs reasonably relied on endivious statements and misrepresentations, not knowing they were false and included suboxone film on their formularies. And then, I'm sorry to keep jumping around. What about 192? Humana suffered injuries when it reimbursed prescriptions that otherwise would not have been made and were paid higher prices. That's your injury, right? That's the RICO injury. Right. And that is our theory. The same theory that was in Evandia, that we pay for prescriptions that would not otherwise have been made. And so that is our RICO. Who absorbed the costs? Well, we did. Did the end user absorb those costs or did your company absorb those? Well, our company. We were the end payers. We are the ones who, when the customer walks into a pharmacy and says, I need suboxone and fill my subscription, you know, there's electronic information that's transferred at that point to us. And if, you know, you present your insurance card, it's at CDS, and we get billed. We pay. The customer may have a co-pay. Some people do. Some people don't. Maybe it's 100%.  And we're picking up 100% of the tab. And so it is our money that is going out the door. There's no, that is not an issue here. That is, and this is a motion to dismiss. So if there's going to be arguments later about the experts who absorbed what, you know, that's premature. That's for trial. But here, there's clear allegation of out-of-pocket loss by us. It's really the same case as Evandia. And Judge Roth, I think you were right that the whole, like, injury point is folded in here. And Your Honor wrote half of your opinion is RICO standing and RICO injury, and the other half is proximate cause. And you found both were satisfied in Evandia. And we would cut and paste. That's because you were paying a sum that you should not have been charged? Exactly, Your Honor. Exactly. But you don't have the amounts that were involved? Well, we will ultimately at trial. We've alleged hundreds of millions of dollars. And Your Honor had a very similar case in a different context. The Wayfarer Sodium case, which is an antitrust settlement case. And Your Honor said that insurance companies were properly in the settlement because insurance companies allege an injury directly to themselves. And the damages, the excess money plaintiffs insurers paid defendants for the drug they claimed they would not have purchased but for defendants' fraud, were in no way derivative of damages to a third party. Again, we will cut and paste. That is exactly, we believe, describes our situation according to the complaint as we pleaded it. And the government's indictments in this case, the only difference between this case and Evandia is that in Evandia there were no indictments. Here there's been indictments, there's been a $1.4 billion in criminal penalties paid by the defendants, a $600 million civil settlement. And so that's the only difference between this case and Evandia. And this is a stronger case. And so what I meant to say is we've attached to our complaints the indictments and all the superseding indictment, the criminal information, and those reveal that the business plans of the defendants were noted, stressed, that 55 percent of the revenue, the suboxone revenue they were hoping to get, was coming from private insurance companies. So we were the target, we were the targets of this scheme. The misrepresentations were aimed at getting suboxone on our formularies. I mean, Centene is the largest Medicaid provider in the country. Humana... The only way folks would be reimbursed was if the drug made it onto the formulary. Correct. And you're saying that the fraud put them on the formulary. Yes. Was the fraud directed at you? It was directed at everybody. It was directed at us because they wanted to get it on the formulary. It was a barrage directed at the scientific community, at the FDA, but we don't have to be the only targets in order to state a regal claim. But how do you plead that you were the target? Because under Rule 9b, you've got to plead fraud with particularity. And plead the fraud involving you and the contacts with you that fraudulent, that induced you to put that, put the drug on the formulary. Right. And this wasn't a Rule 9 case. It wasn't 9b. The district judge didn't, no one said that it wasn't particular enough because we actually had the indictments and all the misrepresentations stated. I would also, I will through the complaints, but first let me say that this case is like Evandia in that in the same way, the misrepresentations in Evandia were not just to insurance companies. And there's also to all third party payers, including the government, to get it on the Medicaid and Medicare formularies. It has to get on their formularies too for the scheme to work. It's to the FDA. And you don't have to be, first party misrepresentation is not a requirement under RICO. That's the Bridge case, this court's case in the St. Luke's Hospital dispute. Those cases both established. You don't have to even, you don't have to be the only target of the misrepresentation or to bring a fraud claim. But we did allege, you know, that there were website postings, annual reports, corporate newsletters, investor presentations that they, that got to us along with everybody else. So the way the formulary works is we have a committee of pharmacists, doctors, nurses who are assessing drugs for safety, efficacy, tolerability, cost effectiveness. And they're looking at the medical literature. They're looking at all the information the defendants are putting out. And they're looking at the FDA. And they're working to determine which drugs should go on the formulary. So it's, the defendants knew that we were going to rely on this information. That was their way. They were going to get it on the formulary. And at the end of the day, the fraud was the representations that the film was safer than the tablets extending the patent. Exactly. Did you present RICO claims? I'm sorry. Did you present RICO claims? We did present RICO claims, yes. We presented a... They were dismissed by the district court. They were dismissed on the Illinois Direct Purchaser Rule. And that was because they determined that you were not direct purchaser. Exactly. Exactly, Your Honor. We think that was not a requirement. That we are the end payer. And that under RICO, which is not antitrust, we include in the reply brief, Congress put RICO in a separate statute. Because it didn't want, it didn't think antitrust was the appropriate statutory home. We don't... Is there any case which holds that in a RICO case, Illinois RIC applies to fraud claims? Not by this court. I mean, the McCarthy case is a parallel RICO antitrust claim of traditional passed on overcharges. And we've distinguished it in our brief. So there isn't a case that applies the indirect purchaser rule to fraud like this. And Avandia and Wafer Sodium are both contrary authority to that. Thank you, Your Honor. Good morning. Good morning, Your Honor. Let me ask you that same question. Is there any case, any RICO case, where Illinois RIC is applied to damages allegedly caused by fraud? Yes. In the District of New Jersey, there are multiple cases like that, including the in-rate insulin case and a series of cases involving the BMWs, RIC and versus BMW, and who versus BMW. The Court of Appeals cases. Court of Appeals cases of RICO fraud. McCarthy said point blank that the indirect purchaser rule applies in RICO just the same as it does. But one can infer that they're talking about antitrust claims rather than fraud claims. In McCarthy, there are both antitrust and RICO claims asserted. And fraud claims? I can't tell you whether the RICO claims were asserted on the basis of, I believe they were asserted on the basis of fraud, but I'd have to, I'd have to check. But the question of whether the indirect purchaser rule applies in RICO cases has come up in many instances. In the McCarthy case, that's squarely that it does. I mean, it seems pretty obvious in an antitrust claim under RICO that Illinois BRIC would apply. But in other RICO claims involving fraud or other crimes, does Illinois BRIC apply? It applies, certainly, Your Honor, and there's three reasons for that. First of all, this Court in McCarthy said it does. Second of all, if you look at the statutes, the RICO standing statute is word for word in the key phrase identical to the standing provision of the Clayton Act. And multiple courts have held that this was done deliberately so that the principles of antitrust standing are imported directly. Did I believe that Congress does anything deliberately? Well, when they use the exact same words, Your Honor. And when multiple courts have said that, point well taken. But intensive Congress is a thing in the law, Your Honor, and the intensive Congress, as shown by the text of statute and as interpreted all along, has been that they imported the antitrust standing. How is this case different from Avandia? Well, what's different from Avandia, primarily, is that Avandia did not address the indirect purchaser rule, that is, the defense that is raised here. But they did address cognizable injury, and they did address out-of-pocket costs, direct injury, to differentiate a RICO fraud claim from a run-of-the-mill fraud claim. And to that extent, I think you can say that Avandia, although it was never played, it was never brought up, but the requirement for cognizable injury in many ways is the same as Illinois BRIC, is it not? The concepts are all related, but the indirect purchaser rule is a distinct rule. And for that, I point you to the McCarthy case again in footnote 14. It actually anticipates this conversation, where you have the court tracing the development of the proxima cause rule, which is the rule that was applied in Avandia, and then tracing the separate development. But McCarthy is an antitrust case, right? I'm sorry? McCarthy is an antitrust case. It's not a fraud case. It is a RICO case, Your Honor, as well as an antitrust. But RICO antitrust as opposed to RICO fraud. Well, antitrust is not a predicate act for RICO. You need a predicate act, and I believe the predicate act there was fraud. But you're not contesting causation, at least not on the papers, correct? We have not raised that defense so far. Right, so far. And you're not contesting injury so far? Correct, Your Honor. Okay. So how is this different than Avandia? What's different from Avandia is that Avandia does not address the proxima cause rule. And Avandia and McCarthy have been looked at side by side by multiple courts. Judge Goldberg was not the first district court judge in the circuit to look at those cases side by side. It was also done in the BMW cases. It was done in the insulin cases. Multiple decisions, and they all boil down to McCarthy talks about indirect purchaser rule. Avandia talks about proximate cause. Those are different rules. And the control rule... But Avandia also talks about cognizable injury. It does, Your Honor. You've got to get beyond that before you get to proximate cause. Well, that's true, Your Honor. That is a requirement there, although that's not the grounds that we've asserted for our motion to dismiss. We have actually two grounds here. One is the indirect purchaser rule, which is a bright line rule and one that is applied very simply and easily on motions to dismiss upon finding that the plaintiff is an indirect purchaser who asserts their injury based upon its purchases. The case is over. There is no standing in either RICO or antitrust. And that's been held in McCarthy in the Third Circuit. It's been held in the Sixth Circuit in two cases, in the Seventh Circuit as well that we cited in our briefs, as well as multiple district courts within the circuit. Could one distinguish McCarthy and the plaintiffs in this case in that in McCarthy, it wasn't real clear that any of the plaintiffs suffered any injuries. And here they're pleading that they suffered a lot of injury based on the fraud that your company perpetrated on insurance companies. The holding of McCarthy did not rest upon that distinction. The holding of McCarthy was a issue of law that there is a bright line rule, and McCarthy uses the phrase bright line. The Supreme Court in Apple v. Pepper two years ago, they used the phrase bright line rule, I believe, 11 times in their opinion. There is a bright line rule that an indirect purchaser does not have standing under the indirect purchaser rule. And so the factual pattern, not only does it not matter, this precise factual pattern, it's something that the court as a matter of policy does not want lower courts to investigate. One of the policy bases behind the indirect purchaser rule is the complication in looking at the different levels of distribution and figuring out what injury belongs at what level and how to allocate. And the instruction there is that courts should not be engaged in that kind of incredibly complicated economic parsing. And that's why they have a bright line rule that ends simply upon a determination that the plaintiff's an indirect purchaser, which they have admitted too many times. The second ground upon which this case can be affirmed is that although the plaintiffs have argued many times that they presented exactly the same kind of fraud that was issued at Avandia, that actually doesn't show up in their complaint. If you look at their complaint, and yes, it must be pled with particularity under Rule 9B, and the Third Circuit held that in, among other cases, Rollo v. City Investments. That kind of particularity does not show up anywhere. The word formulary barely shows up. It shows up twice in the background section. If you're looking at, I believe the court...  What's alleged is alleged, Your Honor. And although mostly what they're citing is an indictment that was dismissed, an allegation is an allegation. We're not taking issue with that. What we're taking issue with is the fact that these plaintiffs did not link the supposed fraudulent conspiracy to themselves. We're in exactly the same position as what Judge Roth wrote in the Rollo case. While many of the allegations relating to the allegedly fraudulent scheme are quite detailed, the complaint lacks any specific allegations about the presentations made to any of the named plaintiffs. The court went on to hold that 9B is the relevant standard, and that a defendant does not have adequate notice unless a fraud is pleaded with particularity. And the court said to link their own injuries to the alleged RICO enterprise, plaintiffs must allege what happened to them. And that's what's missing here. We don't have any allegation about anything that any defendant ever said to any plaintiff. We don't have any allegation regarding what formulary decisions they actually made, nor the circumstances showing that their formulary decisions were based upon something fraudulent the defendant said to them, as opposed to some other factor. There's no allegation as to when all of this happened. In their briefs, they say that the formulary fraud was the first step of the fraud. In their complaint, they actually say something quite different. They say that there are many parts of the supposed scheme, and it started years and years before film was even on the market, when Reckitt and what was then Monosol agreed to do the research and development work that eventually led to the introduction of Suboxone film. There is no allegation as to what person, either described by name or job title, issued a fraudulent communication. They don't tell you what a formulary even is. And it's worse than that, actually, because there's not one plaintiff here. There are five named plaintiffs, and they were independent insurance companies at the time that Suboxone film was introduced in 2010. And not only did they not tell you with particularity the fraud with regard to any one of them, they certainly don't tell you with regard to all five, and it's worse than that. Let me just give you an example. Paragraph 69, in or about December of 2010, NVIDIA was vice president for clinical affairs. They don't put a name there, but they attribute a person. Met with physicians in California and elsewhere in the presence of salespeople. They don't put a name there, but they attribute a person. Humana's not in the room. Centene's not in the room. They don't allege that anything that got said in California was ever said to them. What we have here is, as the plaintiffs have pointed out, Indivier and the other defendants have been sued in all kinds of legal proceedings. And bad news creates copycat cases, and so lawyers can take all the other pleadings that are out there, and they can cut and paste all the stuff from them and put them in a complaint. But what's harder to do, and what these plaintiffs did not do, is say how this supposed fraud affected them. As shown by Rallo, it's not enough to say that these are terrible people, they defrauded all kinds of other people. They need to plead with particularity the circumstances showing that the defendants defrauded them. And that's not in there. The assertion that they make so many times in their brief and standing before you that they were tricked into putting film on the formulary, there's no spot in the complaint that you can actually pick up and start reading and read that that actually happened. It's just not there. I want to touch again a bit on the indirect purchaser rule, because that really is, it's a very simple rule. It's one that's designed to have easy application. And it was most recently discussed in the Supreme Court in the Apple v. Pepper case, described as a bright line rule, and the application of it was described as extremely simple. We have ruled that indirect purchasers who are two or more steps removed from the violator in a distribution chain may not sue. Our decision in the Illinois BRIC established a bright line rule that authorizes suits by direct purchasers, but bar suits by indirect purchasers. No qualifications on that. And in fact, the Supreme Court goes on to say that the court does not want lower courts to start litigating the possibility of a series of exceptions. One of the policy reasons why there is an indirect purchaser rule is because of the danger that plaintiffs at multiple levels of distribution will all claim compensation for the exact same injury. And this court does not need to find whether this policy issue is present here. It's a bright line rule, and the court is explicit here and more in General Hospital that the rule is the rule, whether or not the policy applies in every case. But the circumstances here show why the Supreme Court was correct to have this bright line rule. Here, the injury that's alleged is that because they were supposedly tricked, they paid for suboxone film instead of paying for a competing product that would have been less expensive. That's the allegation. That's an overcharge. You say it was supposedly tricked? Did I hear you correctly? Yes. Why do you say supposedly? That's exactly their assertion. They were tricked into thinking it was actually a safer drug. That's the assertion in their briefs. It's not properly pleaded. And while we're not going to get into the evidence today, we just use that. So I'm going to say supposedly. But they assert an overcharge. In fact, they use the phrase overcharge to describe their injury 11 times in this brief. But isn't saying it's safer sort of tricking them into paying more for it? Well, I'm not quite sure what they're alleging, because their allegations about themselves are pretty sketchy. But they say that they were overcharged. And the thing is that for every package of medicine that they paid for, every package of medicine before they paid for it, an insured patient bought it from a pharmacy. And the pharmacy bought it from a distributor. And the distributor brought it from the manufacturer. And on the facts alleged, every plaintiff at every level of distribution can say, that's my injury. I paid for expensive film instead of less expensive film or instead of a less expensive competing product. And this is not hypothetical. This is what's actually happening. There is right now pending an MDL class action in which a class of direct purchasers, the distributors, are saying that part of their injury is that they paid for more film and more expensive film than they otherwise would have because the defendants defrauded, because the defendants tricked insurance companies like these plaintiffs into covering film on their formulary. We have, in fact, plaintiffs at different levels of distribution claiming duplicative remedies for the exact same injury. And that shows that the policy of the Bright Line Rule is applicable here. And it's a simple case, Your Honor. Inapplicable. Did you say inapplicable? No, Your Honor. It applies exactly here. We have exactly the problem that the Supreme Court was mandated to be avoided by having a Bright Line Rule. So hypothetically speaking, let's assume, just for a moment, that the allegations are true. What recourse would the insurance companies have in a situation where they've been defrauded? The insurance companies, in addition to bringing RICO claims, brought common law claims for fraud and for unjust enrichment. And they have asserted the violation of 66 separate state statutes. Now, none of that is at issue here today because those are all state law claims that were thrown out on jurisdictional grounds. But there's no shortage of laws in this country by which they can get a remedy if they're entitled to one. It's not a question of whether they get any remedy. It's whether they get this remedy. Whether they get a RICO remedy? Yes. The question before this Court is whether they are within the class of people that Congress intended have a RICO remedy. It's not a question as to whether they have any remedy. They have 66 state statutes, two common law counts. Humana has another lawsuit against us in the state courts of Kentucky. They have another lawsuit against us in the state courts of Philadelphia. They are unnamed class members in a class action that is pending in the court below. And there are states that have revoked Illinois BRIC? Yes, Your Honor. A majority of states have specifically revoked Illinois BRIC by statute. This does not affect the federal rule. And in fact, it shows that if Congress wanted to revoke the Illinois BRIC rule, it has a road map of 30 different state statutes that it could follow. It chose not to. Let me ask you. In Avandia, the question of conspicuous injury and out-of-pocket cost, do the plaintiffs meet that requirement of conspicuous injury as outlined in Avandia? In part. They do allege that in their role, in their level of the distribution chain, they paid money to an intermediary who they don't identify in order to pay for part of the medicine that they're insured in. And that's what they've purchased. But one of the problems is that there's duplicative remedies both upstream and downstream. They plead in their complaint that a big part of their business is managing the government aid programs of Medicare and Medicaid. And effectively being a middleman for the ultimate payers, which is the government, and counsel said that the question of who absorbed what, he said who absorbed what, that's a question for experts and that's a question for trial. With respect, the indirect purchaser rule is specifically designed so that that's not an issue that courts should be going into. The question of duplicative remedies, and as they've pleaded, the government entities that they administer these benefits for, they've already levied charges and they've already settled. So we have a duplication of remedies upstream and downstream. We have every reason why the indirect purchaser rule should apply, and whether it should or not, it's a bright line rule and it does. Thank you, Your Honor. Thank you, Your Honor. Just a few points. First, there's no issue of duplication here. The MDL damages for the direct purchasers are seeking are higher prices for suboxone tablets. That is their overcharge. We are not seeking that injury. We are claiming injury from placement of film on our formularies and our out-of-pocket costs. The two are completely different. The second point, Judge Restrepo asked, what would our remedy be but in for RICO? And my friend on the other side said, well, it's the state law. But Congress enacted RICO to ensure that victims of mail and wire fraud have a strong federal remedy when they have direct injury, as we have suffered. In fact, the amicus brief in this case from the Insurance Association, in footnote one, points out that we're actually under a statutory obligation as Medicare and Medicare providers to pursue cost savings, efficiency, fraud remedies. And it would be bizarre for Congress to strip our ability to pursue those remedies. We're under an obligation to pursue them. Right. And I think the same argument was made in Avandia and rejected. Because in Avandia, there was no direct misrepresentations either to the drug, to the insurance companies, to the health care. They were union health care trust funds. The allegation in Avandia and the complaint was, but for defendant's actions, third-party payers would not have paid for Avandia but would have paid for safer, equally efficacious drugs. That's paragraph 163 of the Avandia Joint Appendix, JA 188 in Avandia. And that's true because of cases like Bridge and St. Luke's Hospital. There is no requirement under wire fraud under RICO that the misrepresentation be tailor-made or directly emailed to the plaintiff. It can be put out into the public space, the medical community, the FDA, the drug companies, the insurance companies, with the knowledge that we will act on it. And that's what we allege here. And the statements that we're making, web postings, annual reports, statements at conferences, I mean, as your Honor, as Judge Resheffel pointed out, there are hundreds of statements. They were all filtered through the medical community. They were all going to go ultimately to our committee and the committees of every other third-party payer, Medicaid and Medicare, to get this drug on the formulary. So this was the intent. We do have paragraphs in the complaint, which I'll just throw out quickly, in the Humana Complaint 8-207-134-192, that says we did put on this drug because of, we put it on the formulary because of their fraud. The last point I want to make is the McCarthy case. It's the only case they cite where they say there was a RICO issue. That case, your Honor, Judge Roth correctly pointed out that basically McCarthy was an antitrust case. It was not a fraudulent misrepresentation case. It was a conspiracy to charge excessive prices. What was the essence of the fraud? Was it that it was marketed as a safer drug? Yes. Well, what happened was the exclusivity period on the tablets was running out. So they had this idea that they would create this new form on a film and tell everybody that tablets were terrible. Because that's where the generics were going to come in. They were coming in on the tablet market. So they said that tablets were terrible for children, the children would take too many tablets, film was better, film was safer, among other misrepresentations. And that was done in cooperation with a company. There's a company that markets itself, Monosol, as a film, as a product hopper, because they put the drugs onto film for you. And they worked with them and they filed a sham citizens petition with the FDA to say this is, tablets are unsafe, you've got to use film. There were investor conferences, website posting, the annual report, general conferences, all sorts of forums where they pushed this message. The FDA approves film, the doctors prescribe film, and we put it on our formularies. We were forced to do that. And we acted in reliance on their fraudulent statements that film was a safer, better alternative. Just as in Evandia, the issue was there were different diabetes drugs and there were misrepresentations that their drug was more efficacious than other drugs, a better drug, had advantages. And it's the same situation. The author of Holmes, a similar case where he allows a RICO verdict in favor of insurers. Is that the essence of your fraud case? That is the essence of our fraud case. They said film was better than tablets when it really wasn't. And these were serious, the criminal results here are, the former CEO went to jail. This is not a simple, this is not an unproven fraud, this is not a frivolous case, this is a serious matter. And I think that the idea that the end payers who were the main targets of the scheme, even according to the government's indictments, the notion that the main targets would be left without a federal remedy and going to state fraud law, I mean that's just not the way the serious markets like health care need to work. We need to make sure that, where there's substantial federal funds too, we need to make sure the health care markets are free from fraud. And this case is a big case for making that, sending that message and making that statement. Thank you, your honor. Thanks to all counsel. We will take this matter under advisement and circle back to you.